UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SCOTTIE MCLEAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-00512-TWP-TAB |
| SCOTT LEVINE Doctor, SUSAN RESCH, and ALEYCIA MCCULLOUGH, | ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment, (Dkt. 72), filed by Defendants Scott Levine ("Dr. Levine") Susan Resch ("Nurse Resch"), and Aleycia McCullough ("Ms. McCullough") (collectively, "Defendants"). Plaintiff Scottie McLean ("Mr. McLean") is an Indiana Department of Correction ("IDOC") inmate who at all times relevant to this case was incarcerated at the Pendleton Correction Facility ("Pendleton"). He filed this action pursuant to 42 U.S.C. § 1983 on February 21, 2018, asserting Eighth Amendment claims of deliberate indifference to his serious medical needs against a number of correctional officers and medical personnel. (Dkt. 2.) Following screening pursuant to 28 U.S.C. § 1915A, three defendants remain: Dr. Levine, a psychiatric physician, Nurse Resch, a Registered Nurse, and Ms. McCullough, the Health Services Administrator at Pendleton. The Defendants jointly seek summary judgment. (Dkt. 72.) McLean has responded, although he has not submitted evidence. (Dkt. 76.) The Defendants have replied. (Dkt. 77.) For the reasons explained below, the Motion for Summary Judgment, (Dkt. 72), is **granted**.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)).

Instead, the Court accepts as true the evidence presented by the non-moving party and all reasonable inferences must be drawn in the non-movant's favor. *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 683 (7th Cir. 2017) ("We accept as true the evidence offered by the non-moving party, and we draw all reasonable inferences in that party's favor.").

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

"As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific,

admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Tr. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (internal quotations omitted). "Such a dispute exists when there is sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in the non-moving party's favor as to any issue for which it bears the burden of proof." *Id*. (citing *Packer v. Tr. of Indiana Univ. Sch. of Med.*, 800 F.3d 843, 847 (7th Cir. 2015)). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "courts are not required to scour the record looking for factual disputes." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015).

Mr. McLean's response to the summary judgment motion contains no argument, no citations to the record other than a vague reference to "Defendant's Preliminary Witness and Exhibit List" of February 19, 2019, is not verified, and includes no evidence. (Dkt. 76.) The consequence is that Mr. McLean has conceded the Defendants' version of the events. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment.").

Because Mr. McLean failed to respond with evidence to the Defendants' Motion, in compliance with the Court's Local Rules regarding summary judgment, the Court will not consider allegations in Mr. McLean's Complaint as evidence opposing the Motion for Summary Judgment. Although *pro se* filings are construed liberally, *pro se* litigants such as Mr. McLean are not exempt from procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "pro se litigants are not excused from compliance with procedural rules"); *Members v. Paige*,

3

140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. BACKGROUND

### A. Mr. McLean's Claims

Mr. McLean was forcibly medicated on November 13, 2015, at Pendleton. His claims concerning the act of being involuntarily medicated and the injuries he sustained that day have been dismissed on statute of limitations grounds. *See* Dkts. 15 and 19 (citing Ind. Code § 34-11-2-4). Mr. McLean's surviving claims are that he was injured in the medication incident, and since that time, the Defendants have been deliberately indifferent to his ongoing and continuous pain and suffering. He contends that Dr. Levine failed to follow-up with him and provide him treatment for the pain and suffering, and that Nurse Resch and Ms. McCullough failed to schedule follow-up appointments with medical providers. (Dkt. 22.)

### B. Undisputed Facts

The following statement of facts was evaluated pursuant to the standard set forth in Section I. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and evidence are presented in the light reasonably most favorable to Mr. McLean as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Mr. McLean has been incarcerated by IDOC since 1993. He has a number of physical and mental health conditions including schizoaffective disorder, borderline personality disorder, drug dependence, epilepsy with seizure disorders, and diabetes. (Dkt. 72-2 at 2.) Due to these conditions and his prescriptions for psychiatric medications, Mr. McLean was seen approximately every

4

ninety days by a psychiatrist. *Id.* His treatments included medications and participation in counseling sessions with mental health care providers. *Id.*

On November 13, 2015, Nurse Resch approached Mr. McLean to give him his injection of Fluphenazine Decanoate, a medication to reduce and prevent hallucinations and delusions. *Id.*; Dkt. 72-3 at 2; Dkt. 72-1 at 32-39, 67-77. Mr. McLean refused the medication and became belligerent and aggressive and behaved in a threatening manner. (Dkt. 72-2 at 2.) Nurse Resch felt threatened. *Id*. Dr. Levine was called and ordered an emergency involuntary injection. (Dkt. 72-2 at 7.) With correctional officers' assistance, Mr. McLean was restrained and given the injection. (Dkt. 72-3 at 2.) Nurse Resch observed Mr. McLean after the injection and did not observe any signs or symptoms of injury or adverse reaction. *Id.* at 3-4.

Later the same day of the injection, Mr. McLean submitted two grievances complaining that his rights had been violated, but neither grievance mentioned any medical issues. (Dkt. 72-1 at 65-66.) Ms. McCullough responded to the grievances and informed Mr. McLean that the nurses were following the doctor's orders. There was nothing additional for her to respond to. (Dkt. 72-4 at 2, 4.)

Two days later, on November 15, 2015, Mr. McLean submitted a Request for Health Care form ("HRF") stating that he was feeling dizzy, his heart was beating both slow and fast, he had vomited twice, had a cut on his arm from the injection incident, had headaches and dry mouth, and had not been put under observation. (Dkt. 72-1 at 78.) On November 18 and 19, 2015, Mr. McLean was evaluated at his cell door by Mental Health Provider ("MHP") Jones during Mental Health Restrictive Housing Rounds. *Id.* at 79-82, 83-86. They discussed the injection incident and Mr. McLean's rights. *Id.* Mr. McLean took issue with being on the medication and its administration. *Id*. MPH Jones' notes do not mention any of the illness symptoms Mr. McLean

5

had made in his HRF on November 15, 2015, and do not indicate that Mr. McLean mentioned them to MHP Jones. *Id.*

On November 23, 2015, Dr. Perry met with Mr. McLean and noted he was very angry about the injection. *Id.* at 87-89. He told Dr. Perry that he was not supposed to have been given the injection and threatened to file suit. *Id.* Mr. McLean had calmed down by the end of their visit. *Id.* The records of this visit do not reflect that Mr. McLean reported any of the adverse symptoms he mentioned in his HRF.

Nurse Berry responded to Mr. McLean's HRF on November 23, 2015, eight days after its submission. *Id.* at 78. By then Mr. McLean had seen health care providers on three of the days in between his grievance and Nurse Berry's response. She responded that Mr. McLean was scheduled to see both a medical care and a mental health care provider the next day. *Id.*

Dr. Talbot saw Mr. McLean the next day, November 24, 2015, specifically to follow-up about the involuntary injection. (Dkt. 72-1 at 91-92.) Mr. McLean again complained about the process of being given the injection and how his rights were not protected. *Id.* He told Dr. Talbot that he had "severe neck twisting and chest wall movements immediately after [the injection] … which [have dissipated]" and this concerned him because he was scheduled for another injection and did not know what to expect. *Id.* at 91. Dr. Talbot's physical examination assessment was that Mr. McLean was alert and in "no acute distress." *Id.*

Mr. McLean was scheduled for another injection of Fluphenazine Decanoate by Nurse Resch on November 27, 2015. *Id.* at 93-95. Dr. Perry from behavioral health was present to discuss the situation with Mr. McLean. *Id.* They discussed Mr. McLean's option to refuse the injection, which he did. *Id.* Dr. Perry told him that a hearing would be held to determine whether the injection should again be given involuntarily. *Id.* Mr. McLean understood. *Id.*

6

On November 28, 2015, Mr. McLean submitted two different grievances. One asked why Ms. McCullough was responding to his grievances when she had not been at the involuntary injection and could not give an accurate account of what happened. The other grievance concerned Dr. Perry and MHP Jones, accusing them of being at the involuntary injection but not documenting whether he had been a threat to himself or others. *Id.* at pp. 96-97. Dr. Perry responded to both grievances, telling Mr. McLean that Ms. McCullough's job was to answer grievances and that he was not at the involuntary injection. *Id.*

Dr. Levine and Dr. Perry met with Mr. McLean on November 30, 2015, to discuss the involuntary injection and future administration of the medication. (Dkt. 72-1 at 98-110.) Dr. Levine made extensive notes about Mr. McLean's behavior, thought process, and medical condition. *Id.* He noted, among other things, that Mr. McLean made organized and logical arguments and did not have any symptoms of depression, mania, or psychosis. *Id.*; Dkt. 72-2 at 10. They discussed Mr. McLean's mental health diagnosis, revised it, and decided that Mr. McLean could decline medication in the future. *Id.*

Dr. Perry noted that Mr. McLean was calm, cooperative, and appropriately social. He noted that Mr. McLean would continue to be seen by the MHP assigned to his housing unit. *Id.* at 10-11.

In November 2015, the nursing staff checked on Mr. McLean numerous times. Mr. McLean never made a medical complaint. (Dkt. 72-1 at 64; Dkt. 72-2 at 11.) The checks were made on November 13, 16-23, and 25-30. *Id.* On December 22, 2015, after Mr. McLean had been moved out of restrictive housing and into a different cell house, he visited with Dr. Perry. (Dkt. 72-1 at 114-116.) They discussed a number of mental health issues. There is no mention in the records of any medical complaints. *Id.*

7

On December 25, 2015, Mr. McLean sent an HRF asking to see Dr. Perry soon because he was stressed. *Id.* at 118. Another doctor responded to Mr. McLean and explained that Dr. Perry did not work on his unit and that he was scheduled to see Dr. Drescher on January 4, 2016. *Id.* Dr. Levine did not see or respond to this HRF because it was not directed to him. *Id.*; Dkt. 72-2 at 11.

Mr. McLean sent another HRF to Dr. Perry on December 28, 2015, again asking to see him soon to address his stress and feeling closed-in in his cell. (Dkt. 72-1 at 118.) Dr. Drescher responded the next day and told Mr. McLean that Dr. Perry did not work on his unit and that he was scheduled to see her on January 4, 2016. *Id.* Again, Dr. Levine did not see this HRF because it was not directed to him.

As in November, the nursing staff checked on Mr. McLean regularly in December 2015, and he never lodged a medical complaint. *Id.* at 111.

When Dr. Drescher met with Mr. McLean on January 4, 2016, she noted that he was frustrated because following a recent interaction with mental health staff, he did not receive an apology. *Id.* at p. 119. He wanted to move to an open dorm housing unit. *Id.* There are no reports of medical issues in Dr. Drescher's notes. *Id.*

Dr. Levine met with Mr. McLean for a medication management session on January 14, 2016. *Id.* at 122-31; Dkt. 72-2 at 12. Mr. McLean tried to make Dr. Levine apologize for ordering the involuntary injection on November 13, 2015. *Id.* Dr. Levine recommended that Mr. McLean resume taking the Fluphenazine Decanoate because it would help him, but Mr. McLean refused. *Id.* That was the last time Dr. Levine would provide medical care to Mr. McLean. *Id.*

In the early morning of January 21, 2016, Mr. McLean had a seizure. Dkt. 72-1 at 132-46. Dr. Talbot was called at home and informed of the seizure, and when he arrived at the facility soon afterward, he found Mr. McLean alert but with some minor injuries. *Id.* He examined Mr.

McLean, discussed medications with him, ordered blood panels, prescribed medication, and admitted Mr. McLean to a medical holding cell with seizure precautions and regular checks of his condition. *Id.* When he was checked by Nurse Practitioner Raski later in the day, his vital signs were normal. *Id.* at 147-50.

Nurse Resch charted Dr. Talbot's findings and orders that day, *id*. at 132-46, and when Dr. Talbot discharged Mr. McLean from the medical hold the next day, January 22, 2016, Nurse Resch also charted that event. *Id.* Two days later, Nurse Resch left her employment at Pendleton. (Dkt. 72-3 at 3.) She had no further contact with Mr. McLean.

Dr. Drescher and Dr. Perry met with Mr. McLean on January 25, 2016, in a medical holding cell. (Dkt. 72-1 at 152-57.) Mr. McLean was there awaiting an x-ray because he had refused a body cavity search in his cell. *Id.* He was upset with the custody staff. *Id.* The doctors discussed the situation with Mr. McLean and observed his mental performance. *Id.*

On February 17, 2016, MHP Jones was summoned to Mr. McLean's cell by correctional officers, but Mr. McLean refused to come out of his cell, stating he did not want to be bothered. *Id.* at 158-61.

On February 21, 2016, Mr. McLean submitted another HRF inquiring about a doctor-ordered EKG and blood tests. (Dkt. 72-1 at 165-68.) The nursing staff responded to Mr. McLean, informing him that a doctor would discuss the results during his next visit. *Id.* No mention was made about physical injuries sustained during the involuntary injection. *Id.*

Dr. Talbot met with Mr. McLean on March 4, 2016. *Id.* at 165-68. Several issues were addressed including a bottom bunk and bottom range pass, Mr. McLean's seizures, a keep-on-person medication, dental issues, and Mr. McLean's history of noncompliance with medication orders. *Id.* Dr. Talbot's records do not contain any reference to other complaints or issues from the involuntary injection. *Id.*

Mr. McLean met with psychiatrist Dr. Drescher in her office on March 17, 2016. *Id.* at 169-171. The doctor noted that Mr. McLean was very agitated and anxious, and that he preferred to see Dr. Perry instead of her. Mr. McLean thought she was conspiring against him. *Id.*

On March 28, 2016, Mr. McLean submitted another HRF to Dr. Perry stating that it had been four months since his forced medication and he wanted to start some type of healing process with Dr. Perry. *Id.* at 172. Mr. McLean wrote that he was depressed and angry at the people who refused to take responsibility for the actions they took against him (forcibly medicating him). *Id.* He also wrote that he felt his cell was closing in on him and he wanted to see Dr. Perry as soon as possible. *Id*. Dr. Perry responded to the HRF the next day, explaining to Mr. McLean that he would meet with him and established the parameters of the meeting. *Id*. Defendant Dr. Levine did not see this HRF because it had not been addressed to him. (Dkt. 72-2 at 16.)

Mr. McLean missed his April 14, 2016, appointment with Dr. Perry. Dkt 72-1 at 173-74. He kept an appointment with an optometrist on April 17, 2016. *Id.* at 174-77. When he saw nursing staff on May 4, 2016, he refused to participate in his scheduled labs. *Id.* at 178-81. Dr. Talbot renewed Mr. McLean's prescription for Keppra on May 26, 2016. *Id.* at 182-83. On June 21, 2016, Mr. McLean had a chronic care appointment with Dr. Kuenzli where they discussed his seizure disorder, high cholesterol, and diabetes, and Mr. McLean's bottom bunk and range passes were renewed. *Id.* at 184-86. There are no notes by Dr. Kuenzli regarding any issues with the November 13, 2015, involuntary injection. *Id.*

### III. DISCUSSION

Mr. McLean's claims against the Defendants for deliberate indifference to his serious medical needs arise, because he is a convicted offender, under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in

prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Prison officials have a duty to provide humane conditions of confinement, which includes adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To prevail on a deliberate indifference to serious medical needs claim, Mr. McLean must show that (1) he suffered from an objectively serious medical condition, and (2) the Defendants knew about the condition and the substantial risk of harm it posed but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775 (7th Cir. 2014); *see also Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (*en banc*) ("To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition.").

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks and quoted authority omitted). "If a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it." *Petties*, 836 F.3d at 729. But "in cases where unnecessary risk may be imperceptible to a lay person[,] a medical professional's treatment decision must be such a substantial departure from accepted medical judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Id.* (internal quotation marks and quoted authority omitted). In other words, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have

11

[recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation marks and quoted authority omitted).

Dr. Levine, Nurse Resch, and Ms. McCullough seek summary judgment first on statute of limitations grounds, arguing that the record does not suggest any continuing harm that would except Mr. McLean's claims from the limitations period, and second because no defendant subjectively disregarded a known serious medical need of Mr. McLean. (Dkt. 73.)

The Court bypasses the statute of limitations issue because, on the undisputed medical record, *see* Dkt. 72-1, there is no evidence that any of the three named Defendants knew of any serious medical need for Mr. McLean and then subjectively disregarded the need in the face of a known risk.

There is no evidence or argument that Mr. McLean had a serious medical need following the involuntary injection. Granted, however, that Mr. McLean has a host of mental and medical issues, nevertheless, the record shows undisputedly that health care providers were diligently tending to all of Mr. McLean's needs. Mr. McLean had regular, even frequent, visits with doctors, nurses, nurse practitioners, and mental health providers. Answering the question of whether Mr. McLean's conditions presented a serious medical need is therefore not necessary.

In only one instance do the records indicate that Mr. McLean wanted assistance in getting over the involuntary injection. He sent an HRF to Dr. Perry – not to any of the Defendants in this case – asking for his help in getting over his anger at those involved in the involuntary injection not taking responsibility for their actions. (Dkt. 72-1 at 172.) Dr. Perry met with him and they discussed Mr. McLean's issues.

Each time Mr. McLean met with Dr. Levine, his concerns were addressed. Dr. Levine candidly told Mr. McLean that the injection medication would help him, and Dr. Levine honored Mr. McLean's decision to refuse the medication. There is no evidence that Dr. Levine was aware

of any serious medical need of Mr. McLean's related to his alleged "pain and suffering" from the involuntary injection. There is no evidence that Dr. Levine was deliberately indifferent to any of Mr. McLean's mental or medical health issues.

The same is true for Nurse Resch and Ms. McCullough. Mr. McLean alleged they failed to schedule his appointments with health care providers, but he has not pointed the Court to any evidence to support these claims. The undisputed evidence shows that Ms. McCullough addressed only two of Mr. McLean's HRFs and appropriately responded to them. There is likewise no evidence that Nurse Resch was aware of any serious medical need to which she was deliberately indifferent.

## IV. <u>CONCLUSION</u>

Because the record is clear and there is no evidence to support Mr. McLean's claims against Dr. Levine, Nurse Resch and Ms. McCullough, the Defendants' Motion for Summary Judgment, Dkt. [72], is **GRANTED**. This action is **DISMISSED with prejudice**. Final judgment consistent with this Order shall now enter.

**SO ORDERED**.

Date: 3/10/2020

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

13

DISTRIBUTION:

Scottie McLean, #935200
Plainfield Correctional Facility
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.dom

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jarod Zimmerman
KATZ KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com